IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SANDRA J. BABCOCK
*Individually and on behalf of all those similarly situated*, et al,

Plaintiffs,

v.

BUTLER COUNTY, *et al,*

Defendants.

12cv394
**ELECTRONICALLY FILED**

**MEMORANDUM ORDER DENYING
PLAINTIFF'S MOTION TO LIFT STAY (DOC. NO. 44)**

Before the Court is Plaintiffs' Motion to Lift Stay on the collective action they filed under the Fair Labor Standards Act ("FLSA") for unpaid overtime.  Doc No. 44.  By way of background, Plaintiffs initiated this case on February 23, 2012, by filing a Complaint in the United States District Court for the Eastern District of Pennsylvania.  Doc. No. 1.  On March 29, 2012, the case was transferred to the District Court for the Western District of Pennsylvania, and was assigned to this Court.

On April 11, 2012, Defendants filed a Motion to Dismiss the Complaint (doc. no. 19), and Plaintiffs responded by filing an Amended Complaint.  Doc No. 25.  On April 30, 2012, Defendants filed a Motion to Dismiss the Amended Complaint, or in the alternative, a Motion to Stay (doc. no. 30), to which Plaintiffs responded on May 4, 2012.  This Court, on May 10, 2012, granted Defendants' Motion to Stay, noting that this Court lacked jurisdiction until Plaintiffs exhausted their administrative remedies under a four-step procedure outlined in their Collective Bargaining Agreement ("CBA").  Doc. No. 42.

Plaintiffs have now filed a Motion to Lift Stay, claiming that Defendants rejected their grievance in Step Two of the four-step process on procedural grounds, but did not address the merits of their claim.  Doc. No. 45.  Defendants' Memorandum in Opposition to Plaintiffs' Motion to Lift Stay argues that Plaintiffs' failed to complete all four steps of the grievance process as this Court previously ordered.  Doc. No. 46.

The Motion is now ripe for disposition.

### I.  Legal Standard

This Court's May 10, 2012 Order stated that this Court lacked jurisdiction because Plaintiffs' failed to exhaust their administrative remedies.  Doc. No. 42.  The Court specifically noted in its Opinion, filed contemporaneously with the May 10, 2012 Order, that Plaintiffs were bound by a four-step grievance process set forth in their CBA.  Doc. No. 41.  Plaintiffs now claim they have exhausted their administrative remedies under the CBA.  Thus, this Court must ascertain whether Plaintiffs have exhausted their administrative remedies prior to lifting the stay.

### II.  Factual and Procedural Background

Plaintiffs, who are employees at a Butler County prison, filed an Amended Complaint on April 18, 2012, alleging that Defendants, Plaintiffs' employers, violated the FLSA.  Doc. No. 25.  Specifically, Plaintiffs allege that Defendants required them to take a one-hour meal break, but during that one hour, Plaintiffs were "on call" (which required them to remain within the prison and in their uniforms), but were not paid for fifteen minutes of this one-hour meal break.  Id.

On April 30, 2012, in response to Plaintiffs' Amended Complaint, Defendants filed a Motion to Dismiss under Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6), or in the alternative, a

Motion to Stay.  Doc. No. 30.  Defendants predicated their Rule 12(b)(1) argument upon the fact that Plaintiffs were subject to a CBA, and Defendants argued that Plaintiffs had failed to complete the four-step grievance process required by the CBA.  Doc. Nos. 31-32.  Defendants urged the Court to dismiss the FLSA action because the Court lacked jurisdiction given that Plaintiffs failed to exhaust their administrative remedies.  Doc. No. 31.

In granting Defendants' Rule 12(b)(1) motion and staying the case for lack of jurisdiction, this Court noted that the Plaintiffs' CBA first addressed the one-hour meal break period as follows:

> Eight and one quarter (8¼) consecutive hours of work shall constitute a work shift.  There shall be a paid roll call period of one-quarter (¼) hour (15 minutes) at the beginning of each shift for the purpose of addressing operational needs of the facility and/or mandatory training.  The lunch period shall be a duty-free period of one (1) hour (three-quarters (¾) of an hour (45 minutes) of which will be paid, and one-quarter (¼) of and hour (15 minutes) of which will be unpaid.)  If the duty-free period is interrupted, the time will be compensable.  Employees must remain within the facility during the lunch period unless authorized to leave by the Warden/Deputy Warden.

See Doc. No. 41 at p. 4, and Doc. No. 32-1 at p. 6, Section 5.1 D. 1.  The Court further noted that the CBA addressed how Plaintiffs were supposed to challenge alleged underpayment(s) for services rendered:

> *All disputes* between the County and the Union or between the County and any of its employees relating to the application or interpretation of this Agreement and/or any dispute *concerning the wages, hours*, and working conditions of employees covered by this Agreement shall be settled in accordance with the following procedure . . .

See Doc. No. 41 at p. 7, and Doc. No. 32-1 at p. 21, Section 22.1 (emphasis added).[1]

Based on the CBA, and Plaintiffs' failure to comply with all four steps of the grievance process outlined in the CBA, this Court, on May 10, 2012, granted Defendants' Motion to

---

[1] The remainder of this section of the CBA outlines the four-step grievance process, which, at Step Four, requires the employee, through his or her Union, to "appeal the [wage, hour, or working condition] grievance to arbitration."  Doc. No. 32-1 at pp. 21-22, Section 22.1.

Dismiss and stayed this matter. Doc. No. 42. Plaintiffs' Motion to Lift Stay essentially argues that they have completed the grievance process, and they request that this Court lift the stay previously imposed so they can resume litigation in this forum. Doc. Nos. 44-45. Defendants contend that Plaintiffs have not completed the four-step grievance process. Doc. No. 46.

### III. Discussion

Whether Plaintiffs in this case completed the four-step grievance process is a question of contract construction which this Court has carefully considered.

As a general principle of contract law, when a genuine issue exists on a matter of contract interpretation, the question should be submitted to the arbitrator for resolution. *Antkowiak v. TaxMasters*, 455 Fed. Appx. 156, 162 (3d Cir. 2011). On a matter of contract construction, however, the question can be resolved by the judge as a matter of law. *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 229–30 (3d Cir. 2007) (citing *John F. Harkins Co. v. Waldinger Corp.*, 796 F.2d 657, 659 (3d Cir. 1986) ("Contract interpretation is a question of fact . . . . [C]ontract construction is a question of law . . . .")).

The United States District Court for the Eastern District of Pennsylvania described the distinction between contract interpretation and contract construction as follows:

> The distinction between interpretation and construction is not always easy." *John F. Harkins Co. v. Waldinger Corp.*, 796 F.2d 657, 659 (3d Cir.1986). The Third Circuit has turned to Corbin for guidance:
>
>> "By 'interpretation of language' we determine what ideas that language induces in other persons. By 'construction of the contract,' as that term will be used here, we determine its legal operation—its effect upon the action of courts and administrative officials. If we make this distinction, then the construction of a contract starts with the interpretation of its language but does not end with it; while the process of interpretation stops wholly short of a determination of the legal relations of the parties."

> *Id.* (quoting 3 Arthur Linton Corbin, Corbin on Contracts § 534, at 9 (2d ed.1960)). The Third Circuit has also quoted Professor Patterson: " 'Construction, which may be usefully distinguished from interpretation, is a process by which legal consequences are made to follow from the terms of the contract and its more or less immediate context, and from a legal policy or policies that are applicable to the situation.' " *Ram Constr. Co. v. Am. States Ins. Co.*, 749 F.2d 1049, 1053 (3d Cir.1984) (quoting Edwin W. Patterson, The Interpretation and Construction of Contracts, 64 Colum. L.Rev. 833, 835 (1964)).

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 763 F.Supp.2d 707, 715, n.6 (E.D. Pa. 2011).

Here, the construction of the CBA (specifically the four-step process) is the key to determining whether Plaintiffs have exhausted their administrative remedies and thus, whether the stay may be lifted to allow them to proceed in this Court.

To this end, the Court finds Plaintiffs and Defendants concur that Plaintiffs completed Step One of the four-part process.[2] Defendants admitted in their Brief in Opposition that they "allowed Plaintiffs to bypass Step One and proceed to Step Two of the process." Thus, it appears to this Court that there is no contest that Plaintiffs completed Step One.

Next, Step Two of the four-part process requires each grievant to reduce his or her grievance to a writing and forward the written grievance to his/her department head. Also during Step Two, the department head, the grievant, and a union representative are required to meet to attempt to resolve the dispute. Finally, a written answer is to be given by the County within five working days of such a meeting. The parties disagree as to what occurred during the implementation of Step Two of the process.

Plaintiffs claim they generally followed the instructions of Step Two, and claim that Defendants denied their grievance(s) *en masse*, predicated upon a procedural basis. Defendants

---

[2] In Step One, the grievant had to initiate his/her grievance within five working days of the occurrence. A discussion was to occur between and/or among the grievant, his/her union steward and the grievant's immediate supervisor concerning the occurrence.

claim that Plaintiffs completed Step Two, and contend that their response to Plaintiffs grievance in Step Two was substantive in nature. Defendants further argue that Plaintiffs failed to complete Steps Three and Four, thereafter.

This Court finds based on Plaintiffs' own statements in their Brief in Support of their Motion to Lift Stay, that each Plaintiff did not reduce his or her grievance to a writing and then meet with his/her department head and union representative. Instead, a single letter was prepared on behalf of all Plaintiffs. Moreover, despite some communication between Defendants' and Plaintiffs' counsel subsequent to sending what this Court will term "the collective grievance letter," Plaintiffs never indicated the amount of damage they collectively (or individually) sought in terms of the alleged unpaid overtime.

Defendants stated in their Brief in Opposition that they accepted the collective grievance letter as a grievance made by the class, and then denied the *en masse* grievance on the merits and not as a procedural matter. Doc. No. 46, p. 3. Based on the documentation submitted by the parties, this Court concurs with Defendants that Defendants' denial during Step Two of the process was a substantive denial. Thus, the parties adequately completed Step Two of the grievance process.

Next, Plaintiffs contend that they are not required to complete Step Three of the four-step process. Defendants argue that they must. This Court concurs with Defendants.

Step Three states that if the grievance is not resolved in Step Two "the grievant may appeal to the Personnel Director or his/her designee . . . . The Personnel Director or his/her designee shall meet with the grievant and his/her Union Officer and/or Business Agent in an effort to settle the dispute." Plaintiff argues that the phrase "the grievant may appeal to the Personnel Director" indicates that his step is permissive and not mandatory.

However, to reach this conclusion, Plaintiffs ignore the fact that the "Grievance and Arbitration" section (Section 22.1) of the CBA states as follows immediately prior to setting forth Steps One through Four of the four-step process:

ARTICLE XXII
GRIEVANCE AND ARBITRATION

Section 22.1

All disputes between the County and the Union or between the County and any of its employees relating to application or interpretation of the [CBA] and/or any dispute concerning the wages, hours and working conditions of employees covered by this [CBA] *shall be* settled in accordance with the following procedure:

STEP ONE: . . .

STEP TWO: . . .

STEP THREE: . . .

STEP FOUR: . . .

Doc. No. 45-1, p. 2 (emphasis added).

It is unequivocal from the reading of this introductory paragraph to the four-step grievance process that the parties to a dispute must resolve their dispute following the four-step procedure. Although Step Three uses the word, "may," the Court finds that it is used to indicate that the grievant, if unhappy with the outcome from Step Two can choose to appeal the matter to the Personnel Director – it is not required that the grievant appeal a Step Two outcome. He or she can choose to accept the outcome from the Step Two decision-maker (*i.e.,* the department head).

Moreover, under the facts presented here, counsel for Plaintiffs and Defendants communicated with one another concerning dates for meeting with the Personnel Director. See Doc. No. 46, p. 6-7. At some point in time thereafter, counsel for Plaintiffs abandoned Step

Three of the process and chose to file the instant Motion to Lift Stay.  Thus, Plaintiffs originally began to work through Step Three of the grievance process then stopped.  This stoppage on the part of Plaintiffs does not exhaust the four-step grievance process – this abandons the process.  Thus, Plaintiffs did not complete Step Three.

### IV. Conclusion

Plaintiffs have failed to complete Steps Three and Four of the four-step grievance process.  As this Court previously stated in its prior decision, Plaintiffs must complete the four-step process outlined in their CBA in order to exhaust their administrative remedies.  Doc. No. 41.  The Court arrived at that conclusion based on the construction of the CBA, and the effect of that document upon the action of this Court.   Until all four steps are completed, this Court does not have jurisdiction to hear Plaintiffs' claims.   Accordingly, the Court will deny Plaintiffs' Motion to Reopen Case and Lift Stay (doc. no. 44) by way of an Order filed contemporaneously with this Opinion.

                s/ Arthur J. Schwab
                Arthur J. Schwab
                United States District Judge

cc:   All Registered ECF Counsel and Parties