IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SANDRA J. BABCOCK
*Individually and on behalf of all those
similarly situated, et al.,*

          Plaintiffs,

v.

BUTLER COUNTY, *et al.,*

          Defendants.

12cv394
**ELECTRONICALLY FILED**

**MEMORANDUM OPINION**

In this putative class action lawsuit, the purported class (Plaintiffs), who are employees at a Butler County prison, allege that Defendants, Plaintiffs' employers, violated the Fair Labor Standards Act ("FLSA"). Specifically, Plaintiffs, in their Amended Complaint, allege that Defendants required them to take a one-hour meal break, during which time Plaintiffs were "on call" (requiring them to remain within the prison and in their uniforms), and they were not paid for fifteen minutes of their one-hour meal break.

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. Doc. no. 63. Plaintiffs filed a Brief in Opposition (doc. no. 65) and Defendants filed a Reply Brief. Doc. no. 66. After careful consideration of the arguments presented, and a thorough analysis of the FLSA law specifically related to meal periods, the Court will grant Defendants' Motion to Dismiss for the reasons discussed in greater detail below. In so doing, the Motion for Collective Action Certification filed by Plaintiffs (doc. no. 53) will be denied as moot.

**I. Standard of Review**

Defendants filed the Motion to Dismiss Plaintiffs' Amended Complaint predicated upon Federal Rule of Civil Procedure 12(b)(6).

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

**II. Background**

    **A. Procedural History**

Plaintiffs filed their initial Complaint in United States District Court for the Eastern District of Pennsylvania on February 23, 2012. Doc. no. 1. The case was transferred to this Court on March 29, 2012. Doc. no. 4. On April 5, 2012, Plaintiffs filed their Motion to Certify the Class (doc. no. 14) and a Brief in Support of same.[1] Doc. no. 16. On April 11, 2012, Defendants filed a Motion to Dismiss Plaintiffs' Complaint and Brief in Support. Doc. nos. 19-20. In response to Defendants' Motion to Dismiss, Plaintiffs filed a First Amended Complaint. Doc. no. 25.

On April 30, 2012, Defendants filed a Motion to Dismiss the Amended Complaint or, alternatively, a Motion to Stay Proceedings. Doc. no. 30. On May 10, 2012, the Court granted Defendants' Motion to Dismiss the Amended Complaint because a jurisdictional issue arose. Accordingly, the Court stayed these proceedings until Plaintiffs exhausted their administrative

---

[1] On April 20, 2012, Defendants filed a Response in Opposition to Plaintiffs' Motion for Class Certification. Doc. no. 27.

3

remedies – proceeding through the grievance process of the collective bargaining agreement, which concluded with an arbitration ruling in favor of Defendants. See Court's Opinion and Order at doc. nos. 41-42.

On August 17, 2012, Plaintiffs filed a Motion to Reopen this Case and Lift the Stay. Doc. no. 44. On September 6, 2012, after receiving Defendants' Brief in Opposition to this Motion (doc. no. 46), the Court issued an Opinion and Order denying Plaintiffs' Motion to Reopen this Case and Lift the Stay. This case remained closed until Plaintiffs filed an Unopposed Motion to Lift the Stay on January 22, 2014. Doc. no. 49. The Court granted that Motion on January 24, 2014. Doc. no. 51. Later that same day, on January 24, 2014, Plaintiffs filed a Motion for Conditional Collective Action Certification Pursuant to the FLSA and a Brief in Support of Same. Doc. nos. 53 and 53-1.

On February 5, 2014, Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint and Brief in Support. Doc. nos. 63-64. Plaintiffs filed a Brief in Opposition to the Motion to Dismiss their Amended Complaint (doc. no. 65), and Defendants filed a Reply Brief. Doc no. 66. This matter is now ripe for adjudication.

### B. Relevant Facts

The following facts, which are set forth in the First Amended Complaint, are accepted as true solely for the purposes of deciding this Motion to Dismiss.

In the First Amended Complaint, the Named Plaintiff essentially claims that Defendants failed to properly compensate her (and all the corrections officers formerly and presently employed by Defendants) for overtime in violation of Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Doc. no. 25, ¶ 13. Plaintiffs describe themselves as current and former employees of Defendant Butler County, a prison located in Butler, Pennsylvania, who, "within the last three

4

years[,] have been employed by Defendant Butler County as correction officers." Id. at ¶¶ 14, 21.

Plaintiffs allege that Defendants failed to pay them for "on-call time." Id. at ¶¶ 24-50. Plaintiffs describe this claim as follows: Defendants require Plaintiffs to work eight and one-quarter hour shifts (which include a meal period), but only pay them for eight hours of work.[2] Id. at ¶ 26. Defendants require Plaintiffs to take a one-hour meal break during their eight and one-quarter hour shift. Id at ¶¶ 26-27. Defendants also require that during the one-hour meal break, Plaintiffs remain within the prison, in their uniforms, and "on call to respond to emergencies." Id. at ¶¶ 27-28. Plaintiffs are paid for 45 minutes of the one-hour meal break – the other 15 minutes are not paid. Id. at ¶ 28. Plaintiffs aver that because of the "substantial limitations" that are placed upon them during their one-hour meal break period, the meal break period predominantly benefits Defendants and is not a "non-compensable bona fide meal period" as defined by 29 CFR § 785.19(a). Id. at ¶¶ 35, 41, 50.

### III. Discussion

#### A. Case Management

Defendants argue in their Brief in Support of its Motion to Dismiss that it would be inappropriate for this Court to address the pending Motion for Conditional Collective Action Certification (doc. no. 53) before considering the dispositive arguments set forth in their Motion to Dismiss (doc. no. 63). Doc. no. 62, p. 2. Plaintiffs did not disagree with this premise in their Brief in Opposition to the Motion to Dismiss. See doc. no. 65. Rather, Plaintiffs' Brief in Opposition focuses solely whether their Amended Complaint provided enough factual allegations to support a claim for unpaid wages under the FLSA.

---

[2] This description is consistent with the terms of the Collective Bargaining Agreement.

In addition, this Court finds that deciding the Motion to Dismiss prior to the Motion for Conditional Class Certification is both judicially fair and efficient. Accordingly, the Court will consider the Motion to Dismiss before addressing the Motion for Conditional Class Certification.[3]

### B. Legal Definition of a Compensable Meal Period

The key federal regulation implicated in this case relates to meal periods. That regulation reads as follows:

> (a) Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. . . .
> (b) Where no permission to leave premises. It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.

29 C.F.R. § 785.19 (internal citations omitted).

### C. Test to Meet the Legal Definition of a Compensable Meal Period

The United States Court of Appeals for the Third Circuit has not yet had an opportunity to establish an applicable test to ascertain whether a compensation agreement complies with the

---

[3] Other District Courts within the Third Circuit have likewise decided motions to dismiss prior to deciding motions for class certification. See, *i.e.*, *Reilly v. Northeast Revenue Services, LLC,* 2013 WL 3974181, *1, n. 1, 3:12-cv-02312 (M.D. Pa. Aug. 1, 2013) ("Plaintiff has not objected to this Court addressing this motion to dismiss prior to considering class certification, and, based on the alleged facts, it is appropriate, fair, and judicially efficient to address the material issue raised by the motion to dismiss (whether the refuse fee is a debt under the FDCPA) prior to addressing class certification."), citing *Hudson v. Eaglemark Savings Bank*, 2011 U.S. Dist. LEXIS 49505, 2011 WL 1755540 (E.D. Pa. May 9, 2011) (granting motion to dismiss prior to class certification), affirmed by 2012 U.S.App. LEXIS 6431 (3d Cir. 2012); see also, *In re Wellbutrin XL Antitrust Litigation,* 260 F.R.D. 143, 151 (E.D. Pa. 2009).

above meal period regulation (29 C.F.R. § 785.19). Thus, this Court must look to other Courts for guidance.

The United States Court of Appeals for the Fifth Circuit in *Hartsell v. Dr. Pepper Bottling Co. of Texas,* 207 F.3d 269, 274 (5th Cir. 2000), held that "[t]he 'predominant benefits test' is applied to determine who primarily benefits from the period" and was the appropriate test to "ascertain whether employee[s] should be compensated for their meal period[s]." In *Hartsell*, the Court of Appeals also noted that the "predominant benefits test" is a question of fact, but was "properly determined in this instance by the district court." 207 F.3d at 274.

In addition to the Fifth Circuit, the United States Court of Appeals for the Fourth Circuit in *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 370 (4th Cir. 2011) – relying upon an older decision, *Roy v. County of Lexington, South Carolina,* 141 F.3d 533, 545 (4th Cir. 1998) ("we believe the most appropriate standard for compensability is a 'flexible and realistic' one where we determine whether, on balance, employees use mealtime for their own, or for their employer's benefit") – held that the predominant benefit test should be applied to ascertain whether an employee should be compensated for his or her meal period.

Similarly, the United States Court of Appeals for the Tenth Circuit in *Lamon v. City of Shawnee,* 972 F.2d 1145 (10th Cir. 1992), *cert. den.*, 507 U.S. 972 (1993), held:

> If during meal periods a police officer's time and attention are primarily occupied by a private pursuit, presumably the procurement and consumption of food, then the officer is completely relieved from duty and is not entitled to compensation under FLSA. Conversely, a police officer is entitled to compensation for meal periods if the officer's time or attention is taken up principally by official responsibilities that prevent the officer from comfortably and adequately passing the mealtime.

972 F.2d at 1157-58. The Court of Appeals in *Lamon* also noted:

> This circuit has made clear that under FLSA the test to determine whether on-call time is compensable requires consideration of the agreement between the parties,

> the nature and extent of the restrictions, the relationship between the services rendered and the on-call time and all surrounding circumstances.

Id. at 1157, n.17.

Relying on the Tenth Circuit's decision in *Lamon*, the United States Court of Appeals for the Seventh Circuit in *Alexander v. City of Chicago,* 994 F.2d 333, 337 (7th Cir. 1993), held that "the appropriate standard is instead the one articulated in *Lamon*—a standard that sensibly integrates developing case law with the regulations' language and purpose."

Similar findings concerning the applicability of the predominant benefit test were made by the United States Court of Appeals for the Second Circuit in *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2nd Cir. 1997) ("In our view, this 'predominant benefit' standard 'sensibly integrates developing case law with the regulations' language and purpose,' *Alexander*, 994 F.2d at 337, and more importantly, with the language of the FLSA itself.").

In addition to the above-cited decisions rendered by the United States Courts of Appeals for the Second, Fourth, Fifth, Seventh, and Tenth Circuits in favor of the application of the predominant benefit test, District Courts within the Third Circuit have also ruled in favor of applying the the predominant benefit test. See, *e.g., Aboud v. City of Wildwood*, 2013 WL 2156248, civ. no. 12–7195, (D. N.J. May 17, 2013); *Prise v. Alderwoods Group, Inc.*, 817 F.Supp.2d 651 (W.D. Pa. 2011); *Lugo v. Farmer's Pride Inc.*, 802 F.Supp.2d 598, 613 (E.D. Pa. 2011); and *Oakes v. Com. of Pa.,* 871 F.Supp. 797, 799 (M.D. Pa.1995) ("Despite the fact that the literal language of this regulation requires that the employee be 'completely relieved from duty' to come within its scope, the courts have applied the 'predominantly for the benefit of the employer' standard set forth in *Armour* and *Skidmore*, or a slight variation thereof, to determine whether the employee is entitled to compensation.").

8

In addition to the above-cited law, Defendants recommend that this Court apply the "predominant benefit test." Defendants argue that application of this test – at this juncture of the legal proceedings – will result in the Court dismissing this case. Plaintiffs do not dispute the appropriateness of the application of the predominant benefit test; rather, they argue the facts, as pled, will enable them to prevail under this test.

Given the agreement of the parties as to the applicable test, and further, given the rationale provided by the Courts of Appeals as cited above, as well as the decisions reached by other District Courts within the Third Circuit, the Court finds that use of such a test is fair and compelling. Like many other Courts, this Court finds that the predominant benefit test is the best test "to determine whether on-call time is compensable" <u>because</u> it "requires consideration of the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time and all surrounding circumstances" *Lamon*, 972 F.2d at 1157-58, which promotes fairness.

**D. Application of the Predominant Benefit Test to the Facts Presented in Amended Complaint**

As noted above, Plaintiffs contend that they should be permitted to adduce evidence during discovery to prove that the meal period predominantly benefitted the employer, and thereby prove that their entire 60-minute meal period is compensable.

At first blush, it would seem that Plaintiffs' argument for discovery is reasonable, and that this Court should allow Plaintiffs to have an opportunity to prove that the meal period primarily benefits Defendants. For example, in *Hertz v. Woodbury County*, the United States Court of Appeals for the Eighth Circuit (when considering a burden of proof question with respect to jury instructions) held as follows:

> The statutory default for mealtimes is that they are non-compensable because they do not constitute "work" under the FLSA. See 29 C.F.R. § 785.19. Mealtimes, then, are not exempt from compensation, but rather they are not compensable in the first instance. Furthermore, requiring the County to show that Plaintiffs' established mealtimes were not, in fact, non-compensable would be entirely inefficient. It is Plaintiffs who are in the best positions to prove that their actions during their scheduled mealtimes were for the benefit of the employer and thus not part of a bona fide meal period. To require that the County prove a negative – that an employee was not performing "work" during a time reserved for meals – would perversely incentivize employers to keep closer tabs on employees during their off-duty time.

*Hertz,* 566 F.3d 775, 783 (8th Cir. 2009). Thus, in at least one other case concerning the matter of who predominantly benefits from a meal period, a group of Plaintiffs gathered evidence to meet their burden of proving the meal period predominantly benefitted their employer.

However, in the instant case, Plaintiffs' Amended Complaint clearly provides a factual basis upon which Plaintiffs believe the meal period was for the benefit of their employer(s). Plaintiffs' Brief in Opposition reiterates and restates the salient facts found in the Amended Complaint related to the "predominance" test/issue as follows:

Plaintiff repeats and restates the following most relevant facts:

    1. Plaintiffs are employed by Defendant as corrections officers in Defendant's prison in Butler, PA. (FAC at ¶ 21-22)

    2. Plaintiffs are required to work an 8.25 hour shift, but are only paid for 8 hours. (FAC at ¶ 26).

    3. During that 8.25 hour shift, Plaintiffs are allotted a daily 1 hour meal period during which they are subjected to the following restrictions:

        a. Plaintiffs may not leave the physical building of the prison, not even to go to the parking lot. (FAC at ¶ 27).

        b. Plaintiffs must remain in their uniforms. (FAC at ¶ 27).

        c. Plaintiffs must remain in close proximity to emergency response equipment. (FAC at ¶ 27).

        d. Plaintiffs must remain on-call to respond to emergencies. (FAC at ¶ 27).

10

4. Of this meal period, 45 minute are paid and 15 minutes are unpaid. (FAC at ¶ 28).

5. As a result of these meal period policies, Plaintiffs are negatively restricted during this period in the following manner:

a. Plaintiffs cannot smoke cigarettes or breathe fresh air during the meal period. (FAC at ¶ 29).

b. Plaintiffs cannot sleep during the meal period. (FAC at ¶ 32).

c. Plaintiffs cannot run personal errands during the meal period. (FAC at ¶ 27).

d. Plaintiffs must remain personally prepared to respond to emergency or other unexpected situations. (FAC at ¶ 33).

e. If an emergency or unexpected situation arises during the meal period, Plaintiffs must respond immediately in person, in uniform, and with appropriate emergency response equipment. (FAC at ¶ 34).

As noted above, the Court accepts all of these above facts as true – without the benefit of discovery. Thus, the only question for the Court to resolve is a legal one: Whether the facts provided by Plaintiff (which may be summed up as "restrictions on their actions during their meal periods") were predominantly for the benefit of the employer and, thus, not part of a bona fide meal period.

In support of their argument that the restrictions placed upon them was predominantly for the benefit of the Defendants, Plaintiffs quote from *Reich*, a decision rendered in the United States Court of Appeals for the Second Circuit. Doc. No. 65, p. 7, quoting *Reich, supra.,* 121 F.3d at 65. In reviewing the *Reich* case in its entirety, this Court notes that the Court of Appeals concluded as follows:

> The central issue in mealtime cases is whether employees are required to "work" as that term is understood under the FLSA. See *Henson v. Pulaski County Sheriff Dep't*, 6 F.3d 531, 533–34 (8th Cir. 1993). Although the FLSA itself does not define "work," the Supreme Court has attempted to do so. In *Tennessee Coal,*

11

> *Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944), the Court held that "work" under the FLSA means "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." At about the same time, the Court counseled that the determination of what constitutes work is necessarily fact-bound. See, *e.g.*, *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944) ("Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case."); *Skidmore v. Swift & Co.*, 323 U.S. 134, 136–37, 65 S.Ct. 161, 162–63, 89 L.Ed. 124 (1944) (similar). For example, time spent waiting for an event to occur, such as a fire, may constitute work if an employer hired an employee for that function. See *Armour*, 323 U.S. at 133–34, 65 S.Ct. at 168–69; *Skidmore*, 323 U.S. at 136–37, 65 S.Ct. at 162–63.

*Id.* at 64.

In *Reich*, "outside craft employees" (employees who spent a significant portion of their time on-site, out-of-doors primarily to install, repair, and replace telephone poles and cables) were required by their employer to take a 30-minute lunch break as close to 12 noon as possible. These employees were required to remain outside and in close proximity to their "valuable company equipment including trucks[,]" "fresh air ventilation systems, water pumps, gas testing and fiber optic devices, cable and wire, as well as numerous hand held tools." *Id.* at 63. The Court further noted that the reason for the "close proximity" restriction was to "secure the area and its equipment and to prevent possible harm to the public." *Id.* Ultimately, in *Reich*, the Court of Appeals determined that a subset of workers within the outside craft employees group carried out compensable responsibilities for at least 80% of their lunch periods, and that those outside craft employees, in a different subset, carried out compensable responsibilities at open sites for at least 60% of their lunch periods. *Id.* at 69. The Court of Appeals therefore affirmed a decision by the District Court Judge to award payment related to those ratios. *Id.* at 72.

In addition to Plaintiffs' argument that this Court apply *Reich's* analysis and rationale to reach the same conclusion, this Court was urged by Defendants to consider the analysis and

rationale provided by the Eastern District of Pennsylvania in *Matter of Edward L. Jackson, et al.* Doc. no. 64, pp. 8-12, citing *Matter of of Edward L. Jackson, et al.*, 1983 WL 55559, 62 Comp. Gen. 447, B-207694 (June 9, 1983). The Court acknowledges that the *Jackson* case is factually akin to the instant matter, especially insofar as it involved police officers who had a collective bargaining agreement that specifically noted that the meal period required the officers to remain "on duty and subject to call. . . ." *Id.* at *2.

However, this Court has also considered other, more recent, FLSA cases involving law enforcement officers' lunch break such as *Avery v. City of Talladega, Ala.*, 24 F.3d 1337 (11th Cir. 1994), *Henson v. Pulaski County Sheriff Dept.*, 6 F.3d 531 (8th Cir. 1993), and *Armitage v. City of Emporia, Kan.*, 982 F.2d 430 (10th Cir. 1992). As noted by the United States Court of Appeals for the Eleventh Circuit in *Avery*:

> '[Although] a police officer is on-call and has some limited responsibilities during meal periods does not perforce mean the officer is working.'. . . In this case . . . [t]he City undoubtedly benefits from the restrictions it imposes on the [officers'] meal breaks, but the fact that the City benefits from the restrictions does not mean that the [officers'] meal breaks are predominantly for the City's benefit. The overwhelming testimony of the patrol officers and patrol lieutenants themselves is that they are free to spend their meal breaks in any way they wish so long as they remain in uniform, leave their radios on, and do not leave the jurisdiction.

*Avery*, 24 F.3d 1337, 1346-47, quoting *Lamon v. City of Shawnee, Kan*., 972 F.2d 1145, 1157-585 (10th Cir. 1992) (interpreting the Wage and Hour Division's completely-relieved-from-duty regulation to mean that the test for compensability is whether the employee's meal period is "spent predominantly for the benefit of the employer"), *cert. den.*, 507 U.S. 972 (1993).

Here, as Plaintiffs state throughout their Amended Complaint (as well as argue throughout their Brief in Opposition), the corrections officers are "restricted" from leaving the prison during their meal period – not even to go outside and smoke a cigarette or to go to their cars in the parking lot. The Court finds that like the police officers in *Avery* who were confined

13

to dining in their jurisdiction during their meal plan, the corrections officers are, in fact, confined to their "jurisdiction" – *i.e.,* the prison. Although the confinement of corrections officers to the prison benefits the employer – just like the confinement of the police officers in *Avery* to their respective jurisdictions benefitted the City of Emporia – is must predominantly benefit the employer. Thus, based upon legal analogy to *Avery*, this Court finds that the corrections officers' mere physical confinement to the prison does not rise to the level of "predominantly" being of benefit to the employer.[4]

Moreover, the "confinement" of the corrections officers to the prison does not rise to the level of predominantly being of benefit to the employer from a common sense standpoint. As noted by Plaintiffs, "by keeping Plaintiffs on call, in uniform, and in close proximity to their gear, [Defendant] Butler County is able to include these corrections officers in their calculation of a safe inmate-to corrections-officers ratio." Doc. no. 25, ¶ 45. If a prison riot occurs while some corrections officers are in the midst of their meal periods, the meal-period officers' ability to dress quickly into riot gear and assist their fellow officers in quelling the riot largely benefits those fellow officers – as well as the safety of the meal-period officers. For example, if the named Plaintiff – Sandra Babcock – was in the midst of her meal period and a riot ensued, her ability to quickly respond and assist her fellow officers would increase the likelihood that the riot

---

[4] In *Alexander v. City of Chicago*, the United States Court of Appeals for the Seventh Circuit held, "Under *Lamon*, a law enforcement employee is completely relieved from duty during a meal period 'when the employee's time is not spent predominantly for the benefit of the employer,' 972 F.2d at 1155, 1157; stated differently, the 'FLSA requires remuneration for meal periods during which a police officer is unable comfortably and adequately to pass the mealtime because the officer's time or attention is devoted primarily to official responsibilities.' *Id*. at 1155–56; see also *Armitage v. City of Emporia*, 982 F.2d 430 (10th Cir.1992) (adopting *Lamon* standard)." *Alexander*, 994 F.2d at 337. Applying the *Alexander* and *Lamon* rationale to the facts presented by Plaintiffs in this case, the Court does not find that their Amended Complaint alleges that the corrections officers were "unable comfortably and adequately to pass the mealtime because [their] time or attention is devoted primarily to official responsibilities." Rather, the Amended Complaint alleges that after passing the actual mealtime, the corrections officers could not go outside to their cars or to smoke. Again, by legal analogy to other cases, such as *Avery*, *Alexander* and *Lamon*, Plaintiffs' Amended Complaint is deficient.

14

will be put down quickly and thereby decrease the likelihood that corrections officers – including Ms. Babcock – would be injured or held hostage by inmates. Thus, the Court finds that the ability to respond to an emergency in the quickest fashion possible – by remaining inside the prison during meal breaks – at a minimum, is of equal benefit to the corrections officers and their employer.

Finally, the Court notes that the regulation itself provides a solid basis upon which the Court can grant the pending Motion to Dismiss. The regulation states, in pertinent part:

> Bona fide meal periods are not worktime. . . . The employee must be completely relieved from duty for the purposes of eating regular meals. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

29 C.F.R. § 785.19. The Court finds from these examples that something more than physical confinement is necessary. These examples suggest that an employee must be "chained" to the item or modality that facilitates his or her work, which in turn predominantly benefits his or her employer.

Here, Plaintiffs do not allege or argue corrections officers were required to take their meal break in the area(s) or zone(s) to which they were assigned; nor do the Plaintiffs allege or argue that the officers were required to work from any sort of assigned work stations where their routine paperwork is completed. There are no allegations or arguments suggesting that the officers were required to wear their riot gear during their meal periods. Likewise, there are no allegations or arguments suggesting Plaintiffs must confine their attention solely to the inmates and refrain from doing <u>anything</u> personal during their meal periods, such as take and make personal phone calls, surf the internet, etc. Rather, Plaintiffs' Amended Complaint focuses on

Plaintiffs' inability to go outside the prison during their meal period, which, per Plaintiffs, predominantly benefits Defendants. Given the examples set forth in the completely-relieved-from-duty regulation (29 C.F.R. § 785.19), the Court concludes that the restriction on the corrections officers in this case is not akin to those examples.

### IV. Conclusion

Based on the foregoing legal analysis and rationale, the Court finds that Plaintiffs failed to state a claim for which relief can be granted because Defendants' payment to Plaintiffs for 45 minutes of the 60 minute meal period complies with the meal period regulation, set forth at 29 C.F.R. § 785.19. Accordingly, Defendants' Motion to Dismiss (doc. no. 63) shall be granted with prejudice. Accordingly, Plaintiffs' Motion for Conditional Collective Action (doc. no. 53) will be denied as moot.

An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties